UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE P. CARLSON,<br><br>            Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN,<br><br>            Defendant. | Case No. 14-cv-00531-NC<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 15 |

Plaintiff Jesse P. Carlson seeks judicial review of the Commissioner of Social Security's denial of his claims for disability benefits. Carlson argues that his claim was wrongfully denied because the Administrative Law Judge failed to consider relevant medical evidence, and improperly evaluated his credibility in determining he was not disabled. For these reasons and because the ALJ failed to fully develop the medical record and account for Carlson's Antisocial Personality Disorder, the Court finds there is not substantial evidence to support the ALJ's finding that Carlson was not disabled.

The Court therefore GRANTS Carlson's motion for summary judgment and DENIES Carolyn Colvin's cross-motion for summary judgment. But because the ALJ failed to complete all five steps of the social security disability analysis, the Court REMANDS this case for further administrative proceedings.

I.   BACKGROUND

On May 24, 2010, Carlson applied for Supplemental Security Income, claiming that multiple mental impairments rendered him disabled and unable to work since January 15,

2007. AR 11, 73. Carlson was born on November 21, 1988. AR 237. He was 21 years old at the time that he applied for social security disability benefits in 2010. The record shows that Carlson had an abusive childhood and was at an early age diagnosed with ADHD, anxiety, and an adjustment disorder. AR 14. The Social Security Administration initially denied his claims on March 15, 2011, and upon reconsideration, denied his claims a second time on August 18, 2011. AR 76-88. The SSA concluded that Carlson failed to show that his condition was disabling, especially after he failed to appear for a medical examination that the SSA had specifically requested. AR 76, 83.

### A. Administrative Review

Carlson subsequently requested administrative review of the SSA's decision. AR 89. A hearing before ALJ John Flanagan occurred on August 13, 2012. AR 43-72. Because Carlson was incarcerated at Avenal State Prison during that time, he participated in the hearing via telephone while his counsel was physically present at the hearing. AR 45-46.

#### 1. The Hearing

Carlson is requesting SSI benefits for a closed period between June 25, 2010, when he was released from prison, to February 17, 2011, when he was re-incarcerated. AR 11. At the hearing, the ALJ asked Carlson to testify only about his disability starting from May 2010, the month preceding the closed period and during which he filed his application.

Carlson testified about his education and history with incarceration. AR 60-62. Carlson has been arrested "[j]ust about every year until now," since he was 13 years old. AR 61. Throughout his education, he was in special needs programs. AR 59. He had regular altercations with other students and teachers. AR 60. At the time of the hearing, Carlson testified that the only job he ever held was in retail at the Shoe Pavilion. AR 50.

Carlson testified that he has mood swings and anxiety when working around others. AR 52. He stated, "When I work around people, I just start getting paranoid and really can't work or function with people that well." AR 51. In and out of prison, he stated he was regularly involved in "fights." AR 62-63. Carlson testified that he was in the

Sensitive Needs Yard in the prison because he had difficulty being around the general population and a history of fighting. AR 52-53. According to Carlson, "Simply words going back can spark a hot wire in the my [sic] brain and I just go off." AR 63. He has trouble sleeping (only two and a half or three hours per night) and is distracted after about forty-five minutes from activities, such as reading or watching television. AR 63-64.

Further, he testified that after being shot in the leg and suffering through a car accident, he has had difficulty walking but has not received treatment for his leg. AR 51, 63. He claims that his leg and foot pain has limited his mobility, as he is now unable to walk for more than 20 minutes and cannot stand for more than five to 10 minutes at a time. AR 54.

Besides for hypertension, Carlson does not take any other medication. AR 56. He testified that before incarceration, he has "been on medication most of [his] life for hyperactivity." AR 58.

Following Carlson's testimony, a vocational expert testified at the hearing. AR 65. Based on an assessment of a hypothetical person with 10th grade education in special education, no "exertional restrictions," and occasional contact with "coworkers, the public and supervisors," the vocational expert testified that many unskilled jobs, including being a janitor or unskilled packager, would be available. AR 65-67. Based on an assessment of the same hypothetical person, but instead with "moderate" or "moderate-marked" restriction on interactions with others, the vocational expert testified that the number and types of jobs available would not change by more than 10 percent. AR 67. The vocational expert agreed with the ALJ that a "marked restriction in terms of interactions with coworkers, the public, and supervisors . . . would preclude all work." AR 69. When questioned by Carlson's attorney, the vocational expert testified that someone with limited attention span who requires constant redirection would have difficulty following instructions. AR 69.

The ALJ concluded that after the hearing, he would request orthopedic and psychological consultative examinations of Carlson in the prison. AR 70-71. He stated,

1  "Sometimes the consultative examiners will actually go into the prison and perform the
2  test. Other times, the DDS [Disability Determination Service] has had the staff in the
3  prison perform the tests." AR 70. The ALJ did acknowledge the possibility that testing
4  may not be done, but committed to developing the record as much as he could before
5  making a decision. AR 70.

### 2. The ALJ's Findings

The ALJ "considered the complete medical history consistent with 20 [C.F.R. §] 416.912(d)" and concluded that Carlson "failed to carry his burden of proof of a 'severe' medically determinable impairment." AR 11-12. The ALJ arrived at this decision following the five-step evaluation process for determining whether an individual is disabled. AR 12-13; *see* 20 C.F.R. § 416.920(a).

Step one asks whether a claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920. At step two, the ALJ evaluates whether the claimant has a medically severe impairment or combination of impairments. *Id.* At step three, the ALJ considers whether the impairment or combination of impairments meets or equals any of the listed impairments under 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step four, the ALJ assesses whether the claimant is capable of performing her past relevant work. *Id.* At step five, the ALJ examines whether the claimant has the residual functional capacity to perform any other substantial gainful activity in the national economy. *Id.* If the ALJ reaches step five and determines that the claimant has the residual functional capacity to perform other gainful activity, the claimant is not disabled. *Id.*

Here, at step one, the ALJ determined that Carlson never engaged in substantial gainful activity. AR 13.

At step two, the ALJ identified Carlson's impairments but did not find them medically severe. AR 13, 16. He listed Carlson's medically determinable impairments as: "miscellaneous diagnoses of an explosive disorder; depressed by being incarcerated and unable to talk to family members, possible malingering; psychosis NOS, sadness at the death of his father; and polysubstance abuse in include [sic] methamphetamines, cocaine,

marijuana, and alcohol." AR 13-14. He summarized older medical records as showing that Carlson had been diagnosed with ADHD, anxiety, and an adjustment disorder, lived in an abusive and chaotic household, and was arrested multiple times as a juvenile. AR 14.

To identify Carlson's medically determinable impairments, the ALJ reviewed the "relevant medical evidence dating from February 2011 through November 2011[.]" AR 15. He excluded much of the early medical evidence because it was "too old in time to be related to the claimant's current level of mental functioning, or associated with the application for SSI filed on May 24, 2010." AR 14. Additionally, he found the more recent medical evidence to be "quite scattered[,] inconsistent" and "unreliable." AR 15.

In addition, the ALJ found evidence of malingering and inconsistencies in the record that undermined Carlson's credibility. AR 15-16. The ALJ identified repeated observation entries by mental health care providers noting Carlson's possible malingering and refusal of mental health therapy and medication. AR 15. Moreover, he found Carlson to be inconsistent on his reported symptoms, particularly with auditory hallucinations. AR 15. The ALJ noted that while incarcerated, Carlson had repeatedly refused to cooperate with his attending physicians. AR 14.

Relatedly, the ALJ explained that Carlson's criminal activity involvement and incarceration are unfavorable factors in the step-two determination. AR 16. According to the ALJ, Carlson's long history of criminal activity is "one of the primary reasons that he has not been employed" and, contrary to Carlson's argument, "is not proof of a medically determinable impairment." AR 16. Furthermore, the ALJ found that Carlson's status as a convicted felon undermined Carlson's credibility in the disability determination. AR 16. Specifically, the ALJ found Carlson's "statements concerning the intensity, persistence and limiting effects of his alleged symptoms are not credible to the extent they are inconsistent with [a] finding that the claimant has no severe impairment or combination of impairments." AR 16. Moreover, the ALJ stated generally that Carlson's repeated incarcerations frustrated the Disability Determination Service's and the ALJ's efforts to obtain consultative evaluations. AR 16.

Assessing whether Carlson's medically determinable mental impairments are severe, the ALJ rated the degree of Carlson's limitations in four broad functional areas, outlined in 20 C.F.R. pt. 404, subpt. P. app. 1. AR 16. The ALJ found "no limitations" in Carlson's activities of daily living; social functioning; and concentration, persistence or pace. AR 16. He also found "no episodes of decompensation which have been of extended duration[.]" AR 16. Thus, the ALJ determined that Carlson's impairments were not severe. AR 16.

In short, the ALJ concluded that because Carlson "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work activities for 12 consecutive months[,]" Carlson "does not have a severe impairment or combination of impairments." AR 14.

The ALJ did not continue the disability evaluation process into steps three through five.

### 3. The Appeals Council Review and Jurisdiction

Carlson appealed the ALJ's decision to the Appeals Council on September 18, 2012. AR 1. On December 19, 2013, the Appeals Council denied his request for review. *Id.* Carlson then initiated this action for judicial review on February 4, 2014. Dkt. No. 1. All parties consented to the jurisdiction of a magistrate judge. Dkt. Nos. 7, 9.

## II. STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance."). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be

upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir.1995).

**III.  DISCUSSION**

Carlson argues that the ALJ erred by (1) failing to properly evaluate the medical record; (2) finding that Carlson had no severe impairments under step two of the disability determination process; and (3) improperly evaluating Carlson's credibility. Dkt. No. 13 at 5. The Court evaluates each of these arguments below.

**A.     ALJ's Evaluation of the Medical Evidence**

The regulations governing claims for social security disability benefits require that a claimant bear the burden of proving disability by providing evidence of medical impairments. 20 C.F.R. § 416.912(a), (c).

Nonetheless, the Social Security Administration has its own responsibility to develop the claimant's complete medical history for at least 12 months preceding the month in which the application is filed, "unless there is a reason to believe that development of an earlier period is *necessary*." 20 C.F.R. § 416.912(d) (emphasis added). "This duty exists even when the claimant is represented by counsel." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). *See* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence . . . . [B]efore we make a determination that you are not disabled, we are responsible for developing your complete medical history, including . . . making every reasonable effort to help you get medical reports from your own medical sources.").

Indeed, in evaluating the degree of functional limitation for mental impairments, the Social Security Administration engages in "a complex and highly individualized process that requires [it] to consider multiple issues and all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation," including "all relevant and available clinical signs and laboratory findings, the effects of [the claimant's] symptoms, and how [the claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. § 404.1520a(c)(1); *see* 20 C.F.R. Part 404, Subpt. P, App. 1.

Case No.: 14-cv-00531-NC         7

In addition, an ALJ may not choose to focus only on parts of the treatment record that favor the ultimate conclusion. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result"). "[It is] legal error where ALJ's findings completely ignore medical evidence without giving specific, legitimate reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (ALJ erred in limiting his review of claimant's medical records to a search for only certain impairments while ignoring medical evidence of claimant's other impairments without explanation) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408-09 (9th Cir. 1986)).

Here, the ALJ dismissed "[m]uch of the medical evidence in [Carlson's] file [as] not relevant or material, since it is too old in time to be related to [Carlson's] current level of mental functioning, or associated with the application for SSI filed on May 24, 2010." AR 14. Instead, the ALJ "base[d] [his] decision in this case on the relevant psychiatric evidence that does exist in the record. Exhibits 13F, 19F, 20F." AR 15. These exhibits, however, consist only of treatment records from February 2010 to November 2011. AR 19-20. The ALJ deemed at least six other treating source exhibits that predate February 2010 as irrelevant and immaterial. AR 14.

In his motion for remand, Carlson argues that the ALJ erred by failing to consider psychiatric treatment records that document severe mental impairments, among them Carlson's Antisocial Personality Disorder. Dkt. No. 13 at 11. In describing this disorder, Carlson cites to the Diagnostic and Statistical Manual of Mental Disorders.

According to the Diagnostic and Statistical Manual of Mental Disorders, the authoritative reference used in diagnosing mental disorders, an individual suffers from Antisocial Personality Disorder if he pervasively disregards the rights of others (e.g., deceitfulness, aggressiveness, impulsivity, lack of remorse); is at least 18 years old; exhibits symptoms of "conduct disorder"—another disorder characterized by a failure to conform to social norms—before the age of 15; and this antisocial behavior results not just exclusively from schizophrenia or a manic episode. American Psychiatric Association,

*Diagnostic and Statistical Manual of Mental Disorders* 706 (4th ed. 2000); *see also, e.g.*, *Young v. Murphy*, 615 F.3d 59, 61 (1st Cir. Mass. 2010) (citing the *Diagnostic and Statistical Manual of Mental Disorders* to describe Antisocial Personality Disorder and its elements).

Here, Carlson was diagnosed with Antisocial Personality Disorder at as early as 22 years old. AR 382 (diagnosis from Dr. Jennifer Chaffin of Antisocial Personality Disorder). In light of the need to understand the progression of Carlson's disorders from adolescence to adulthood—including whether he exhibited symptoms of "conduct disorder" before the age of 15 for the purposes of an Antisocial Personality Disorder diagnosis—the Court agrees with Carlson that there was "reason to believe that development of an earlier period [than the 12 months preceding the month in which Carlson filed his application] [wa]s necessary" before the ALJ could make a determination regarding whether Carlson was disabled. *See* 20 C.F.R. § 416.912(d).

Instead, the ALJ ignored evidence relevant to "obtain[ing] a longitudinal picture of [Carlson's] overall degree of functional limitation" for his mental impairments. *See* 20 C.F.R. § 404.1520a(c)(1). The ALJ does acknowledge that Carlson "had an abusive an [sic] chaotic childhood" and was variously diagnosed with ADHD, anxiety, and adjustment disorder. AR 14. Indeed, since childhood and through adulthood, multiple doctors or institutes have associated Carlson with various mental disorders. *See, e.g.*, AR 237 (letter from Dr. Kenneth A. Berg noting diagnosis in 1993 of Attention Deficit Disorder with Hyperactivity at age 4); AR 261 (diagnosis from Dr. George H. Stewart in 1996 of Oppositional Defiant Disorder at age 7); AR 290 (assessment by Alameda County Department of Behavioral Health identifying "hyperactive and conduct disorder" at age 15); AR 382 (diagnosis from Dr. Jennifer Chaffin of Antisocial Personality Disorder at age 22). While the ALJ did recognize that Carlson had been diagnosed with explosive disorder and polysubstance abuse at age 21, AR 556, he did not factor in Carlson's earlier medical records in evaluating the severity of Carlson's current mental impairments. *See* 20 C.F.R. Pt. 404, Subpt P., App 1 § 12.00(D)(2) ("Mental Disorders") ("[I]t is vital to obtain

Case No.: 14-cv-00531-NC                    9

evidence from relevant sources over a sufficiently long period prior to the date of adjudication to establish your impairment severity.").

And while the ALJ did state that he considered Exhibit 13F, which contains a diagnosis of Antisocial Personality Disorder from his treating psychiatrist, the ALJ neither mentioned this disorder in his decision nor did he explain why the disorder failed to constitute a severe mental impairment under step two of the Social Security Administration's five-step sequential disability framework.

In short, the ALJ erred when he failed to properly factor into his disability analysis Carlson's extensive history of various mental disorders, including Antisocial Personality Disorder, without providing specific, legitimate reasons for doing so.

Similarly, the ALJ committed an error by not considering evidence related to Carlson's prior disability claims from 1993 and 2000, when the Social Security Administration did find him disabled. AR 131 (Carlson's "Full Disability Insurance Benefits (DIB) Review Sheet"). Not only was the ALJ responsible for developing Carlson's complete medical history (20 C.F.R. §§ 416.912(d) & 416.945(a)(3)), but the regulations explicitly require that that ALJ consider "all relevant evidence to obtain a longitudinal picture of [a claimant's] overall degree of functional limitation" for mental impairments. 20 C.F.R. § 404.1520a(c)(1). Past medical records, including those associated with the Social Security Administration's prior findings of Carlson's disability, are directly relevant to obtaining this longitudinal picture. *See Kimmins v. Colvin*, No. 12-CV-4206-YGR, 2013 WL 5513179, at *9 (N.D. Cal. Oct. 4, 2013) ("By not developing the record relating [to claimant's medical records associated with his prior disability finding in 2002], [the] ALJ effectively ignored potentially relevant medical evidence without giving specific, legitimate reasons for doing so.").

**B.     ALJ's Finding of No Severe Mental Impairments**

Carlson contends that that the ALJ erred by finding that Carlson did not have any severe mental impairments during step two of the disability inquiry.

At step two, an ALJ considers whether the claimant has a "severe medically

determinable physical or mental impairment" or combination of such impairments that has lasted or is expected to last more than 12 months. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

"A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental abilit[ies] to perform basic work activities." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). Relevant basic work activities include: (1) understanding, carrying out, and remembering simple instructions; (2) use of judgment; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). "Great care should be exercised in applying the not severe concept," and if the ALJ is "unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step." SSR 85-28, 1985 WL 56856, at * 4.

Substantial evidence does not support an ALJ's conclusion that a particular mental disorder is not a severe impairment if the ALJ fails to even mention the disorder. *Black v. Astrue*, 472 Fed. Appx. 491, 492-493 (9th Cir. 2012). In *Black v. Astrue*, the Ninth Circuit found that because claimant Kristina Black's treating physician diagnosed her as suffering from anxiety disorder, and Black alleged she was disabled in part due to anxiety disorder, the ALJ, at step two, had to consider whether this disorder constituted a severe impairment. *Id.* According to the Ninth Circuit, "By disregarding the anxiety disorder

diagnosis, the ALJ failed to offer the 'specific and legitimate reasons' required to reject a treating doctor's conclusions." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) ("We have also held that 'clear and convincing' reasons are required to reject the treating doctor's ultimate conclusions.")).

Similarly, the ALJ in this case erred by not considering whether Carlson's Antisocial Personality Disorder constituted a severe impairment under step two of the disability inquiry. Like in *Black*, Carlson's treating physician, psychiatrist Dr. Jennifer Chaffin, diagnosed Carlson with Antisocial Personality Disorder in March 2011. AR 382. Carlson also alleged in his brief—which he submitted to the ALJ before his administrative hearing—that his disability resulted in part from this disorder. AR 186-193. Admittedly, the ALJ did acknowledge several of Carlson's diagnoses, including explosive disorder, and depression because of incarceration. AR at 14. Yet the ALJ failed to discuss, much less acknowledge, Carlson's Antisocial Personality Disorder in his decision. Accordingly, "the ALJ erred at step two by not considering whether [Carlson's Antisocial Personality] [D]isorder is a severe impairment." *See Black*, 472 Fed. Appx. at 492.

Still, it is true that "[a] decision of the ALJ will not be reversed for errors that are harmless." *See Curry v. Sullivan,* 925 F.2d 1127, 1131 (9th Cir. 1991). Here, however, the ALJ's decision was not harmless. Because the ALJ found that Carlson did not have a severe impairment at step two, he never reached other steps of the disability inquiry, such as evaluating Carlson's residual functional capacity. *See Kimmins*, 2013 WL 5513179, at *9 (finding that ALJ's error was not harmless because his mental impairments were not considered in step three nor in determining his [residual functional capacity at steps four and five). Thus, the ALJ's failure to complete this entire inquiry negatively impacted Carlson's application for benefits.

**C.   ALJ's Evaluation of Carlson's Credibility**

An ALJ may find it necessary to make credibility assessments in hearings. *Hudson v. Bowen*, 849 F.2d 433, 434 (9th Cir. 1988). "[A]n ALJ must be free to disregard self-serving statements that cannot be verified . . . ." *Id.* (citing *Nyman v. Heckler,* 779 F.2d

528, 531 (9th Cir. 1985)).  Where a credibility determination is a "critical factor" in the ALJ's decision, the ALJ must make an "explicit credibility finding" that is "supported by a specific, cogent reason for the disbelief."  *Rashad v. Sullivan,* 903 F.2d 1229, 1231 (9th Cir. 1990).  If a reviewing court agrees that the ALJ's finding is so supported, it must be given great weight.  *Id.*; *Hudson,* 849 F.2d at 434.

Here, the ALJ noted that Carlson's "status as a convicted felon relates to the very credibility of his allegations and his attending mental health care providers have repeatedly questionede [sic] whether he is malingering."  AR 16.  According to the ALJ, these factors—in addition to Carlson's refusal to seek treatment, inconsistent symptoms, and multiple criminal convictions and period of incarceration—"amounts to a failure of proof on the part of the claimant to establish with any degree of reliability the ongoing existence of a severe mental disorder or disorders."  *Id.* at 15-16.  ("I find that the claimant's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms are not credible").

With such statements, the ALJ suggests that Carlson's deceitfulness defeated his chances of attaining an award.  In particular, the ALJ states, "[T]he claimant's repeated refusal to participate in mental health treatment indicates that he did not feel the need for such care."  AR 15.  The ALJ also highlights inconsistencies from Carlson, noting that "[a]t times, Mr. Carlson alleged auditory hallucinations and then, on other occasions, denied that he had any."  AR 15.

But it is not appropriate for the ALJ to discount Carlson's disability allegations on the basis of his refusal to seek treatment.  Indeed, "when a claimant has been diagnosed with a disorder whose symptoms include deceitfulness, denying disability because the claimant exhibits this symptom is a catch-22."  *Dombroski v. Apfel*, 1998 WL 372551, at *4 (E.D. Pa. May 15, 1998) (noting deceitfulness as a symptom of Antisocial Personality Disorder) (citing the *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000)).

Here, Carlson has been diagnosed with Antisocial Personality Disorder.  As the

Case No.: 14-cv-00531-NC            13

Third Circuit recognized, "malingering and manipulation are symptoms of the anti-social personality disorder." *Morales v. Apfel*, 225 F.3d 310, 319 (3rd Cir. 2000) (citing *Diagnostic and Statistical Manual of Mental Disorders*, 702 (4th ed. 2000) ("individuals with Antisocial Personality Disorder . . . may repeatedly lie, use an alias, con others, or malinger"). By focusing primarily on Carlson's "status as a convicted felon" and his malingering, without looking at the larger context of Carlson's decades-long history of various mental disorders, including Antisocial Personality Disorder, the ALJ erred when he denied disability benefits on the basis of his credibility analysis of Carlson. *See Carr v. Astrue*, 2009 U.S. Dist. LEXIS 94157, at *25 (E.D. Cal. Sept. 22, 2009) ("By using Plaintiff's malingering to implicitly reject all aspects of Plaintiff's limitations, some of which stemmed from a uncontroverted diagnosis of antisocial personality disorder, the ALJ erred in his analysis.").

Additionally, the ALJ improperly blamed Carlson for a failure to develop the record. The ALJ stated that after the hearing, the ALJ "attempted to have consultative evaluations performed [on Carlson] at Avenal State Prison by orthopedic and psychological consultants, but the [Disability Determination Service] informed me that these evaluations could not be performed because there is no agreement or arrangement with the prisons in California to permit them." AR 14. Yet in describing his credibility analysis, the ALJ concluded that the "failure to develop the record falls on the claimant, since the DDS and I both attempted to obtain relevant consultative evaluations. These efforts were defeated due to the claimant's own misconduct, resulting in repeated incarcerations." *Id.* at 16.

This castigation of Carlson by the ALJ makes little sense in light of Carlson's mental impairments, and the lack of institutional arrangements that would have permitted the ALJ to more fully develop the record. *See also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

Put simply, the ALJ erred by emphasizing Carlson's seemingly deceitful behavior

and his status as a convicted felon to discredit him, while failing to evaluate Carlson's credibility within the larger context of his personality disorders.

## IV. CONCLUSION

Because the ALJ failed to consider all of the relevant medical evidence, including Carlson's Antisocial Personality Disorder, and found that Carlson did not have a severe impairment, the Court GRANTS Carlson's summary judgment motion and DENIES Colvin's cross-motion for summary judgment.

But due to the fact that the ALJ did not complete all five steps of the disability inquiry, this case is REMANDED for further administrative proceedings in accordance with this Order.  In particular, this Court instructs the ALJ to consider evidence in the record of Carlson's Antisocial Personality Disorder, as well as evidence from Carlson's past medical history that relates to this disorder, when conducting steps three, four, and five of the social security disability analysis.

**IT IS SO ORDERED.**

Dated:  February 18, 2015            _____
                                     NATHANAEL M. COUSINS
                                     United States Magistrate Judge